UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEFFREY R. FORD, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>BNSF RAILWAY COMPANY, a Delaware corporation,<br><br>    Defendant. | Case No. C16-1383 RSM<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant BNSF Railway Company ("BNSF")'s Motion for Summary Judgment. Dkt. #22. BNSF argues, *inter alia*, that Plaintiffs Jeffrey Ford, Donald Bigham, and Geoffrey Mirelowitz cannot establish a prima facie case under the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109, the sole basis for this action. Plaintiffs oppose this Motion. Dkt. #24. For the reasons set forth below, the Court GRANTS BNSF's Motion and DISMISSES all claims in this case.

## I.     BACKGROUND

This case concerns the termination of employment of Plaintiffs Jeffrey Ford, Donald Bigham, and Geoffrey Mirelowitz with BNSF. Although the parties have submitted extensive facts about Plaintiffs' employment and about BNSF's practices generally, the Court is only

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

concerned with whether or not Plaintiffs can present evidence that they were terminated for protected activity in violation of the FRSA.

Plaintiffs were fired on August 24, 2012. Dkt. #23-15. They had been suspended pending an investigation into events occurring earlier in the year. *Id.*; *see also* Dkt #23-14 (setting forth procedure for being withheld from service). BNSF stated that the terminations were for violating certain company rules related to clocking in and out, among other related rules. Dkt. #23-15.

On December 4, 2012, Plaintiffs filed complaints with the Occupational Safety & Health Administration ("OSHA") under the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109. Dkt. #23-16. Plaintiffs essentially argued that they were whistleblowers, "fired in retaliation for refusing to authorize the use of safety-related equipment… [and] for reporting in good faith a hazardous safety condition… about unsafe switches." *Id*. These complaints did not further explain when and where Plaintiffs refused to authorize the use of safety-related equipment, or when and where they reported hazardous safety conditions.

On March 31, 2016, OSHA issued Secretary's Findings, concluding that "there is no reasonable cause to believe that [BNSF] violated the FRSA," "insufficient evidence to establish reasonable cause that a violation had occurred," and "[t]he evidence failed to show a nexus between the protected activities and the adverse actions." Dkt. #26-1. Plaintiffs objected to OSHA's findings and requested a hearing before an Administrative Law Judge ("ALJ"), which was later dismissed without prejudice. Dkt. #23-18. On August 31, 2016, plaintiffs filed separate complaints with this Court pursuant to 49 U.S.C. § 20109(d)(3). *See* Dkt. #1. These were consolidated into this action on January 20, 2017. Dkt. #12. BNSF now moves for summary judgment dismissal of all Plaintiffs' claims. Dkt. #22.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

### B. Requirements for Claims brought under the Federal Railroad Safety Act

The FRSA serves "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. Pursuant to the FRSA, a railroad

carrier, such as BNSF, may not "discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part," to an employee's engagement in a protected activity. 49 U.S.C. § 20109(a). To state a claim of retaliation under the FRSA, a plaintiff bears the initial burden of pleading sufficient facts that demonstrate "(1) he engaged in a protected activity; (2) the employer knew he engaged in the allegedly protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable personnel action." *Rookaird v. BNSF Ry. Co.*, No. C14-176RSL, 2015 WL 6626069, at *2 (W.D. Wash. Oct. 29, 2015); *Araujo v. N.J. Transit Rail Operations, Inc.*, 708 F.3d 152, 157 (3d Cir. 2013); *Heim v. BNSF Ry. Co.*, 849 F.3d 723, 726-27 (8th Cir. 2017). If the plaintiff establishes this prima facie case, the burden shifts to the railroad carrier to demonstrate "by clear and convincing evidence that [it] would have taken the same unfavorable personnel action in the absence of the protected activity." *Rookaird*, 2015 WL 6626069 at *2.

   **1. Protected Activity**

To sustain a retaliation claim under the FRSA, a plaintiff must have engaged in a protected activity. *Rookaird*, 2015 WL 6626069 at *2; *Araujo*, 708 F.3d at 157. The FRSA specifies what constitutes a protected activity, grouping them generally into three categories: (1) providing information pertaining to the investigation of or proceeding about a violation of safety regulations, *see* 49 U.S.C. § 20109(a); (2) "reporting, in good faith, a hazardous safety or security condition" or refusing to work around a hazardous safety condition, *see id*. § 20109(b); and (3) requesting medical treatment for a work-related injury, *see id*. § 20109(c).

BNSF argues there is no evidence that Plaintiffs engaged in a protected activity. For Plaintiffs Bigham and Ford, Plaintiffs claimed in deposition that this protected activity occurred

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

in April or May of 2012 when they asked Superintendent Matthew Garland what kind of switch maintenance program there was for the Seattle Terminal. Dkt. #23-1 (Bigham Deposition) at 124:3-129:17; Dkt. #23-2 (Mirelowitz Deposition) at 43:21-47:1.). Garland allegedly did not get back to Plaintiffs with an answer. Bigham Dep. at 126:19-127:18. BNSF argues that this cannot constitute protected activity because Plaintiffs did not provide information or assist in an investigation about a violation of safety regulations, and that therefore the activity is not protected under 49 U.S.C. § 20109(a). BNSF argues it cannot constitute protected activity under 49 U.S.C. § 20109(b) either because "Plaintiffs reported no hazardous safety condition during their meeting with Garland…" Dkt. #22 at 11. BNSF argues that the Court should also dismiss Mirelowitz's claim against BNSF, "insofar as Mirelowitz relies upon the April or May 2012 meeting with Garland and Marx to try and satisfy the required element of protected activity." *Id*.

Plaintiffs' Response is full of passionate argument, yet, incredibly, only contains *two* citations to the record, discussed below. Plaintiffs' "Facts" section narrates as if citations are a pointless formality. For example, and critical to the Court's analysis here, Plaintiffs state—by footnote—that "[t]he crew complaints, at issue in this case, began with a particular switch beginning in January of 2012," that "[t]he crew complained about the switch repeatedly but the switch initially was not properly repaired, and that "[e]ventually after considerable effort by Bigham, Ford and Mirelowitz, and resistance by some BNSF officers, the switch was finally repaired." Dkt. #24 at 4 n.3. Plaintiffs make this important assertion without citation. In discussing the meeting with Garland, which Plaintiffs rely on to establish a protected activity, Plaintiffs assert that "[i]n that meeting… and in subsequent email correspondence the crew jointly asserted the need for improvements in switch maintenance." *Id*. at 5 n.4. Again, no

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

citations. Plaintiffs cannot rely on the words of their counsel. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) ("[L]egal memoranda and oral argument are not evidence, and they cannot themselves create a factual dispute sufficient to defeat summary judgment"). The first of Plaintiffs' citations is to a May 25, 2012, email from Garland to Plaintiff Mirelowitz, which states:

> Geoff,
>
> Following up on our conversation regarding Switch Maintenance a few weeks back in West Seattle. Apologize for taking this long to get back to you.
>
> Below is the process that our Engineering Team adheres to for switch maintendance in West Sea.
>
> 1) Each switch is check once per week, this typically occurs on Thursday or Friday.
> 2) Switch maintainer is assigned to check, in case of vacation or illness another maintainer is assigned
> 3) When checking each switch, the switch is first thrown and if it throws fine he/she continues to next switch. If switch does not throw correctly it is then broomed, oiled and rechecked.
> 4) If switch is hard to throw, torque indicator is utilized to validate and is adjusted to specifications.
>
> Please let me know if you have any concerns.

Dkt. #25-2 at 64. Plaintiffs argue "[b]ased upon this email alone there is sufficient proof that protected conduct occurred and that the Defendant knew about the conduct." Dkt. #24 at 14. The Court disagrees. This email, alone, provides no evidence that Plaintiffs *reported* a safety issue, as opposed to inquiring about one, and provides no evidence of a *hazardous* safety situation. Plaintiffs argue, without citation, that "it is undisputed that the three plaintiffs made safety complaints concerning the condition of railroad track switches." *Id.* at 13.[1] This is flatly

---

[1] Plaintiffs argue that they "reported a defective track switch on January 31, 2012; and then from January through May, there were other ongoing difficulties with the switches and with difficulty getting the Defendant to fix the defective switches at Job 113. The three plaintiffs (jointly) submitted and then pushed complaints concerning the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

contradicted by BNSF's briefing, to which Plaintiffs are responding. BNSF does not concede that Plaintiffs engaged in protected activity. Plaintiffs briefing cites to only one other exhibit in the entire Response brief, "Declaration of George A. Thornton, Exh. 10," described by Plaintiffs' counsel as "true and correct copies of some of BNSF articles regarding Plaintiffs, specifically Don Bigham, recognizing him for his ongoing loyalty and commitment to his career with Defendant." Dkt. #25 at 2; Dkt.#25-10. The Court believes Plaintiffs intended to cite to Exhibit 9, "the FRA report dated January 25, 2013, detailing inspection of track switches in the West Seattle area," but cannot be sure. *See* Dkt. #25 at 2; Dkt. #24 at 15. In any event, this evidence does not support the existence of protected activity.

Pursuant to the Local Civil Rules, parties must support factual assertions with a citation to the record, including a pincite to the relevant page or pages. *See* LCR 10(e)(6) ("In all cases where the court is to review the proceedings of an administrative agency, transcripts, deposition testimony, etc., the parties shall, insofar as possible, cite the page and line of any part of the transcript or record to which their pleadings, motions[,] or other filings refer."). Using specific citations, the nonmoving party must direct the court's attention to specific facts and may not rely on generalized declarations or general citations to an entire deposition. "The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030-1031 (9th Cir. 2001); *see also Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999) ("[A] district court is not 'obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim.'") (internal citation

---

safety of railroad track switches where they regularly worked." Dkt. #24 at 13. Again, there are no citations for any of this.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

omitted); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'") (internal citation omitted).

Although Plaintiffs are the nonmoving party, they must still make a sufficient showing on an essential element of their case with respect to which they have the burden of proof to survive summary judgment. *Celotex, supra*. Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251. The Court finds that Plaintiffs have failed to make a sufficient showing that they engaged in protected activity in this matter, and that this is an essential element of their case with respect to which they have the burden of proof. Plaintiffs' attempts to cobble together protected activity evidence, either by submitting hundreds of pages of uncited documents, or by pointing to the May 25, 2012, email and surrounding communications, do not rise above a scintilla. Asking about safety issues does not equate to reporting on safety issues, and certainly there is no evidence submitted of reporting on a *hazardous* safety condition, as required under the FRSA. Without evidence to support the protected activity element, Plaintiffs cannot meet the requirement to show a prima facie case under the FRSA, and the Court's analysis stops. Summary judgment dismissal of all of Plaintiffs claims is warranted.

### III. CONCLUSION

Having reviewed the relevant briefing, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

1) Defendant BNSF's Motion for Summary Judgment (Dkt. #22) is GRANTED. All of Plaintiffs' claims are DISMISSED.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

2) All pending Motions in this case are STRICKEN.

3) This case is CLOSED.

DATED this 8th day of December 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9